IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION | § § § | |
| Plaintiff, | § § § | |
| v. | § § § | Civil Action No. 3:19-CV-2857 |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES | § § § § | |
| ALEX AZAR, SECRETARY OF HEALTH AND HUMAN SERVICES | § § § § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF PLAINTIFF-INTERVENORS BAYLOR HEALTH CARE SYSTEM, METHODIST HOSPITALS OF DALLAS, AND TEXAS HEALTH RESOURCES' MOTION TO INTERVENE**

Plaintiff-Intervenors Baylor Health Care System, Methodist Hospitals of Dallas, and Texas Health Resources (collectively, "the Texas Hospitals")[1] respectfully submit this Brief in Support of their Motion to Intervene in this action by Plaintiff the Texas Health and Human Services Commission ("HHSC") against Defendants the United States Department of Health and Human Services ("HHS") and Alex M. Azar, in his official capacity as Secretary of HHS.[2] HHS is the

---

[1] The intervenors in the Departmental Appeals Board  proceedings at issue were Baylor Health Care System, Methodist Hospitals of Dallas, Texas Health Resources, and North Texas Division, Inc. Additionally, the Centers for Medicare & Medicaid Services' review of the collaborative programs in Dallas and Tarrant Counties, Disallowance TX/2016/001/MAP, as well as the subsequent recoupment by the Texas Health and Human Services Commission for the Centers for Medicare & Medicaid Services' disallowance, included and affected all four intervenors in the Departmental Appeals Board proceedings at issue. North Texas Division, Inc., however, has not joined as a Plaintiff-Intervenor in this action.

[2] Plaintiff-Intervenors Baylor Health Care System, Methodist Hospitals of Dallas, and Texas Health Resources' Motion to Intervene ("Motion") is supported by this Brief in Support of Plaintiff-Intervenors Baylor Health Care System, Methodist Hospitals of Dallas, and Texas Health Resources' Motion to Intervene ("Brief") and Appendix to Plaintiff-Intervenors Baylor Health Care System, Methodist Hospitals of Dallas, and Texas Health Resources' Motion to Intervene ("Appendix").

- 1 -

federal agency responsible for administering the Medicaid program, which it does through the Federal Centers for Medicare & Medicaid Services ("CMS").

The Texas Hospitals move to intervene in this proceeding pursuant to the permissive provisions of Fed. R. Civ. P. 24(b). The Texas Hospitals have a clearly identifiable and substantial interest in the case as they are the parties who directly suffered millions of dollars of harm from the HHS Departmental Appeals Board ("DAB") decision described below. Without objection, the Texas Hospitals participated as intervenors in the administrative proceedings described below[3] and the Texas Hospitals should be intervenors in this appeal.

## I.  FACTUAL BACKGROUND

Medicaid is a joint federal – state healthcare program in which states provide a level of funding that is supplemented by financial assistance from the federal government. 42 U.S.C. §§ 1396, et seq.  Each state uses Medicaid to provide healthcare to certain needy and disabled persons in the state in accordance with a CMS-approved state plan for medical assistance (the "State Plan") and any state plan amendments ("SPAs") revising the State Plan that are approved by CMS. 42 C.F.R. §§ 430.0, 430.10, and 430.12. Through the use of either state or local governmental entity funds, each state provides at least 40 percent of each Medicaid dollar expended within the state (the "state share"). 42 U.S.C. § 1396a(a)(2). Each state receives federal matching funds ("federal share" or "FFP"). 42 C.F.R. §§ 400.203 and 430.1, and 45 C.F.R. § 95.4.

Texas participates in the Medicaid program under the State Plan developed by the Texas Medicaid agency, HHSC, and approved by CMS, and a section 1115 waiver developed by HHSC and approved by CMS. 42 U.S.C. §§ 1396a and 1315; 42 C.F.R. §§ 430.10 – 430.25.

---

[3] Exhibit A, Ruling Granting Motion to Intervene, Texas Health and Human Services Commission Board Docket No. A-17-51, Appx. 1-3.

Medicaid reimbursement for hospital provider inpatient services is calculated based on three factors: (1) the amount of state-wide and local governmental entity funding (supplemented by the federal share) available for Medicaid services; (2) the amount and type of care the provider renders to Medicaid beneficiaries; and (3) the maximum amount the category of providers would have received if those same services were provided to Medicare beneficiaries, rather than Medicaid beneficiaries. This third factor is often referred to as a hospital's Medicaid "Upper Payment Limit" or "UPL." 42 C.F.R. §§ 447.257, 447.271 and 447.272.

Federal law permits states to supplement a Medicaid agency's payments for services provided by hospitals, as long as such supplemental payments: (1) are made pursuant to a State Plan; (2) do not cause a provider's reimbursement to exceed its UPL; and (3) comply with the federal provider-related donation requirements. 42 C.F.R. §§ 447.272, 433.54, 433.56, 433.57, 433.66, 433.67, and 433.74. This final requirement is the only one at issue in this appeal.

On September 1, 2016, CMS issued Disallowance TX/2016/001/MAP, in which CMS disallowed $26,844,551 in FFP to the State of Texas for the quarter ending December 31, 2015 related to certain Medicaid uncompensated care supplemental payments made to the Texas Hospitals.[4] To support the disallowance, CMS argued that by providing privately-funded charity care services to indigent patients at the Dallas County Hospital District ("DCHD") and Tarrant County Hospital District ("TCHD") hospital facilities, the Texas Hospitals indirectly assumed financial responsibilities of DCHD and TCHD in exchange for Medicaid supplemental payments. CMS maintained that this arrangement constituted an impermissible, in-kind, provider-related donation and hold harmless arrangement in violation of federal law. Notably, CMS premised its retroactive disallowance on State Medicaid Director Letter #14-004, which was new sub-

---

[4] Exhibit B, Disallowance TX/2016/001/MAP, Appx. 4-8.

regulatory, informal guidance CMS had issued seven years after the Texas Hospitals had begun providing such charity care.[5]

After seeking reconsideration from CMS, which was denied, HHSC timely appealed CMS' final disallowance decision to the DAB. The Texas Hospitals, were granted leave to intervene in that administrative proceeding. On August 7, 2018, DAB affirmed the disallowance, but reduced the disallowance amount to $25,276,116. On October 5, 2018, HHSC and the Texas Hospitals filed a Joint Motion for Reconsideration and Reversal, which the DAB denied on October 2, 2019. HHSC then filed this action on December 2, 2019 pursuant to the Federal Administrative Procedure Act, 5 U.S.C. § 706(2)(A), challenging the DAB's decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Texas Hospitals seek to intervene here on the same grounds.

The Texas Hospitals were active participants in the collaborative arrangements with the DCHD and the TCHD at issue in this disallowance, which arrangements were developed in collaboration with HHSC and CMS and subsequently extensively scrutinized by CMS in 2007-2008 and again in 2014-2015.

The Texas Hospitals have suffered significant financial loss as a result of this disallowance. After the disallowance of $25,276,116 was affirmed, HHSC sought recoupment from the Texas Hospitals. In September 2018, the Texas Hospitals repaid to HHSC their substantial portion of the $25,276,116 federal share Medicaid supplemental payments that were the subject of the disallowance.

---

[5] Exhibit C, State Medicaid Director Letter SMDL#14-004, Accountability #2: Funding and Donations (May 9, 2014), Appx. 9-15.

## II.  ARGUMENT

The court should permit the Texas Hospitals to intervene pursuant to Fed. R. Civ. P. 24(b). Permissive intervention is a matter of discretion for the court and is appropriate when: (1) intervention is timely; (2) intervenor's claim or defense share common questions of law or fact with the main action; and (3) granting intervention will not unduly delay or prejudice the original parties to the case. Fed. R. Civ. P. 24(b)(2); *GNL Ridglea, LLC v. Guang Dong Hailea Grp. Co.*, No. 4:18-CV-00286-O-BP, 2018 WL 5259657, at *4 (N.D. Tex. Oct. 5, 2018); *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). 'Federal courts should allow intervention when no one would be hurt and the greater justice could be attained.' *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

### A.     Intervention is timely.

Whether a motion to intervene is timely depends on four factors: (1) the length of time the intervenors knew or should have known of their interest in the case; (2) prejudice to existing parties caused by the intervenors' delay; (3) prejudice to the intervenors if their motion is denied; and (4) any unusual circumstances. *Aderholt v. Bureau of Land Mgmt.,* No. 7:15-CV-00162-O, 2016 WL 3365251, at *2 (N.D. Tex. Mar. 14, 2016) (citing *United States v. Covington Cty. Sch. Dist.*, 499 F.3d 464, 465–66 (5th Cir. 2007)).

The Texas Hospitals have filed this Motion to Intervene and their proposed Plaintiff-Intervenors' Complaint less than thirty days after Plaintiff HHSC filed its Plaintiff's Original Complaint [Dkt. No. 1] ("HHSC's Complaint") and prior to the Defendants being served. Thus, there is no rational argument that a delay in requesting intervention would prejudice the original parties in this case. Moreover, the Texas Hospitals have conferred with HHSC, which supports

their request to intervene. The Texas Hospitals are committed to adhering to the deadlines in this case and to working together to consolidate their efforts and reduce the burden on the Court and the other parties.

Finally, the Texas Hospitals are aware of no unusual circumstances that would support denying intervention.

**B.      There are common questions of law and fact between the Texas Hospitals' claim and the main action.**

Like HHSC, the Texas Hospitals seek judicial review of the DAB's August 7, 2018 decision affirming the disallowance of $25,276,116 in federal funding. Both HHSC's Complaint and the Texas Hospitals' proposed Plaintiff-Intervenors' Complaint share the common core question of law – whether the DAB's decision is contrary to 5 U.S.C. § 706(2) and should be set aside by the Court. The same set of facts – as evidenced by HHSC's Complaint and the Texas Hospitals' proposed Plaintiff-Intervenors' Complaint – are relevant to this shared question of law.

**C.      The Texas Hospitals have a substantial interest in the outcome of this judicial review, and intervention will not cause delay or prejudice any of the original parties to the case.**

The Texas Hospitals have suffered millions of dollars of financial losses as a result of this disallowance, and thus have a substantial interest in the outcome of this judicial review. In September 2018, after the DAB's decision was affirmed, HHSC recouped from the Texas Hospitals their portion of the disallowed amount. As a requirement for participation in the Texas Healthcare Transformation and Quality Improvement Program 1115 Demonstration Waiver Program, under which the Texas Hospitals received the Medicaid supplemental payments at issue

here, the private hospitals were required to sign a Certification of Hospital Participation.[6] This certification provided, in part, that should CMS disallow a claim for federal funding based on a claim submitted by a private hospital, HHSC has the right to recoup the amount disallowed by CMS. State regulations also provide that in the event of a disallowance by CMS of FFP related to a hospital's receipt of Medicaid supplemental payments, HHSC may recoup an amount equal to the amount of the disallowance. *See* 1 TEX. ADMIN. CODE § 355.8201(j). Accordingly, while HHSC is the plaintiff in this litigation, the Texas Hospitals have suffered the financial consequences of the DAB's decision. Because of the direct financial impact of the DAB's decision on the Texas Hospitals, the Texas Hospitals will be prejudiced if intervention is denied.

Further, there will be no delay in this matter from the intervention. The intervention is sought before CMS has even answered. The Texas Hospitals are already familiar with the law and facts from their intervention and briefing and will seek no delay in any scheduling order attributable to their entry into the case.

## III.  PRAYER

Based upon the foregoing, the Texas Hospitals request that the Court grant their Motion to Intervene and permit the Texas Hospitals to file the proposed Plaintiff-Intervenors' Complaint included as **Exhibit E** (Appx. 24-123) in the accompanying contemporaneously filed Appendix to their Motion to Intervene, and grant such other and further relief as the Court determines appropriate.

---

[6] Exhibit D, State of Texas Health and Human Services Commission, Texas Healthcare Transformation and Quality Improvement Program 1115 Demonstration Waiver Program Certification of Hospital Participation (Version 2012-1 (09/05/2012)), Appx. 16-22.

Dated: December 18, 2019

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP


/s/ *Carol Poindexter*

Carol Poindexter
(*pro hac vice application forthcoming*)
Missouri State Bar No. 45067
carol.poindexter@nortonrosefulbright.com
799 9th Street NW, Suite 1000
Washington D.C. 20001
Telephone:  (202) 662-0200
Facsimile:   (202) 662-4643

Marc B. Collier
Texas State Bar No.  00792418
marc.collier@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701-4255
Telephone:  (512) 474-5201
Facsimile:   (512) 536-4598

Shea Haass
Texas State Bar No. 24055609
shea.haass@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:  (214) 855-8000
Facsimile:   (214) 855-8200


*Counsel for Plaintiff-Intervenors Baylor
Health Care System, Methodist Hospitals of
Dallas, and Texas Health Resources*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 18th day of December, 2019, a true and correct copy of the foregoing document was served on all counsel of record by filing it with the Court's CM/ECF system in compliance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ *Shea R. Haass*
Shea R. Haass